## COMMONWEALTH *vs.* WILLIAM HASTINGS.

A police officer of the city of Boston, appointed under *St.* 1838, *c.* 123, with all the power of a constable, except that of serving civil process, who arrests an intoxicated person, while guilty of disorderly conduct, and releases him on his promise to go directly home, may lawfully retake him, on his going into a bar room before he is out of the officer's sight.

L. was appointed, by the mayor and aldermen of Boston, under *St.* 1838, *c.* 123, " a police officer (at the National Theatre) with the power of a constable, except the power of serving civil process." *Held,* that if L.'s power was limited to a part of the city, yet that it was not limited to the space within the walls of the theatre, but extended to the environs, so far as the special vigilance of an officer might be required to keep the peace and preserve order among persons frequenting the theatre, or carrying others to and from it, or supplying refreshments; and also to shops, stalls and stands, kept in the vicinity, for the purpose of supplying refreshments.

THE indictment against the defendant alleged that he, at Boston, on the 26th of April 1844, " with force and arms, in

and upon one Grant Learned an assault did make, said Learn-
ed then and there being a police officer of the city of Boston,
and then and there being in the lawful discharge of his duty
as such police officer, and him then and there did beat, bruise,
wound and evil treat, and did then and there obstruct, hinder
and oppose said Learned, in the discharge of his duty as such
police officer, and which he, the said Learned, was then and
there attempting lawfully to perform."

At the trial in the municipal court, there was evidence
tending to prove that, on the 26th of April 1844, one Davis
was intoxicated, and conducting himself in a disorderly man-
ner, at the National Theatre ; that said Learned thereupon
arrested him, and took him from the theatre towards the jail
or watch house ; that after they had proceeded a few rods on
their way, Learned released Davis, on his promise to go
directly home ; that Davis thereupon, while still in sight of
Learned, went into a bar room near the theatre ; that
Learned immediately followed him, and retook him in the
bar room, for the purpose of conveying him to jail ; and that
the defendant thereupon interfered, and obstructed Learned.

The only authority, under which Learned acted, appears in
the following certificates, which were not objected to as in-
competent or insufficient evidence of the facts therein recited :
" City of Boston, July 31st 1843.   I, the subscriber, do here-
by certify that Grant Learned has been duly appointed, by
the mayor and aldermen, a special police officer, for the year
ensuing.                    S. F. McCleary, City Clerk."

" City of Boston, April 8th 1844.   I, the subscriber, do
hereby certify that Grant Learned has been duly appoint-
ed, by the mayor and aldermen, a police officer, (at the
National Theatre,) with the power of a constable, except
the power of serving and executing civil process, for the
year ensuing.   The said Grant Learned to be paid for his ser-
vices by the manager of said theatre.

S. F. McCleary, City Clerk."

The defendant's counsel requested the court to instruct the
jury, that Learned had no authority to retake Davis, by vir-

tue of either of the appointments named in said certificates; but the court instructed the jury that, if they were satisfied of the facts which the evidence tended to prove, the appointments referred to in said certificates authorized Learned to make the arrest or recapture of Davis in the bar room.

The jury found the defendant guilty, and he alleged exceptions to the said instructions.

*Eastman,* for the defendant.

*S. D. Parker,* for the Commonwealth.

SHAW, C. J.   The defendant was indicted in the municipal court for an assault and battery on Grant Learned, averred to be a civil officer, and obstructing him in the discharge of his duty.   The defendant was convicted, and filed exceptions, upon which the case comes before this court.

1.   The first exception is, that the said Learned was not an officer of the law.   It appears by *St.* 1838, *c.* 123, that the mayor and aldermen of the city of Boston were authorized to appoint such police officers, for said city, as they might judge necessary, with all or any of the powers of the constables of said city, except the power of serving and executing any civil process.   Under this authority, the said Learned received two appointments, both of which were in force at the time of the alleged assault.   It appears that he was appointed generally, by the mayor and aldermen, as a special police officer, for the year ensuing, on the 31st of July 1843.   It further appears that, on the 8th of April 1844, he was appointed a police officer, (at the National Theatre,) with the power of a constable, except the power of serving civil process, for the year ensuing ; said Learned to be paid for his services by the manager of said theatre.   It appears very clear that the mayor and aldermen had authority to appoint as many police officers, for the city, as they might judge necessary, and that Learned was so duly appointed.   His powers are designated and limited by the statute, and include all the powers of constables as conservators of the peace.

It was insisted for the defendant, that the last appointment,

under which Learned was acting, limited the exercise of his power to the theatre ; and that this must be construed to be *within the theatre.* Whether the clause in the parenthesis (at the National Theatre) limited his power to a particular part of the city, or whether the appointment and the statute made him a police officer for the whole city, and the clause in question was intended as a direction, by the mayor and aldermen, of the place where his authority should be ordinarily exercised, (of which we give no opinion,) the exception, we think, cannot be sustained, for two reasons. *First,* that his second appointment did not supersede his first, which was still in force, and made him a police officer for the city. But *secondly,* suppose the clause (at the National Theatre) limited his power. to a part of the city, we are of opinion that the defendant's construction would not be correct. The authority would not be limited to the space within the walls of the theatre, but would extend to the passages and the environs, so far as the special vigilance of an officer might be required to keep the peace and preserve order amongst those frequenting the theatre, those carrying persons to and from it, and those supplying refreshments, and also to shops, stalls and stands, kept in the vicinity, for that purpose. He, therefore, had authority to act outside of the theatre, in its vicinity, as well as within it.

2. It was contended that Learned, having permitted the disorderly person to go out of his actual custody, upon his promise to go home and be guilty of no more disorderly conduct, could not afterwards retake him. If it were true, as contended under the former exception, that the power of the officer was limited by the walls of the theatre, and that his power to arrest and retain the disorderly person arose from having first taken him within the theatre, there would be some force in the argument. This not being so, the argument fails. It has often been held that constables, as conservators of the peace, have power to arrest, upon view, persons violating the laws, and detain them until they can be brought before a magistrate. *Taylor* v. *Strong,* 3 Wend. 384. Bac Ab. Constable, C.

We think the authority of the police officer was not gone, when he permitted his prisoner to go from him, on his promise to go directly home, and be guilty of no more disorderly conduct. His offence was that of being intoxicated, and, under the influence of intoxication, committing disorderly acts. When therefore, being still in sight of the officer, in violation of his engagement to leave the scene of disorder, he entered a bar room, where he was likely to aggravate his offence, and increase the cause of his disorderly conduct, the officer was well justified in arresting him, in order to carry him before a magistrate, whether it be regarded as a recaption for the original purpose, or a new arrest for disorderly conduct still continuing. The interference of the defendant, therefore, was unjustifiable and unlawful.

*Exceptions overruled.*